# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **TANIKA SHUNTA CRAIG,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 2:17-cv-02522 |
| ) | |
| **TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

Before the Court is the Magistrate Judge's Report and Recommendation (the "Report"), dated August 6, 2019. (ECF No. 48.)[1] The Report recommends granting Defendant Tennessee Department of Children's Services' ("Tennessee DCS") Motion for Summary Judgment. (Id. at 240.) Plaintiff Tanika Shunta Craig objected to the Report on August 19, 2019 (the "Objection"). (ECF No. 50.) Tennessee DCS filed a response to the Objection on August 27, 2019. (ECF No. 51.)

---

[1] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

For the following reasons, Craig's Objection is OVERRULED, and the Report's recommendation is ADOPTED. Tennessee DCS's Motion for Summary Judgment is GRANTED.

**I. Background**

On July 21, 2017, Craig filed a pro se complaint (the "Complaint") against Tennessee DCS alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). (ECF No. 1 at 1.) Craig submitted an amended complaint (the "Amended Complaint") on September 7, 2017. (ECF No. 9.)

Craig's Amended Complaint reiterates the alleged violations of Title VII, arguing that Tennessee DCS failed to hire her as a full-time employee, terminated her from a probationary period of employment,[2] provided unequal terms and conditions of employment, and discriminated against her generally, all based on her race and color. (See ECF No. 9 at 23.) The Magistrate Judge accurately recites the rest of the background and the procedural posture of the case in the Report. (ECF No. 36 at 240-43.) Craig does not object to that recitation. (See ECF No. 50.) The Court need not repeat it here.

---

[2] Tennessee DCS hired Craig as a DCS case manager on probationary status for twelve months. (ECF No. 44-4 at 194.) Her probationary employment required her to meet certain conditions of employment or face termination. (See id. at 196-98.) It is undisputed that, after two months on probationary status, Tennessee DCS terminated Craig. (Id. at 208.) Craig disputes the justification for her termination. (ECF No. 50 at 260.)

2

On May 20, 2019, Tennessee DCS filed a Motion for Summary Judgment under Federal Rule of Civil Procedure 56(a). (ECF No. 44-1 at 166.) Tennessee DCS contends, inter alia, that the summary judgment standard is satisfied because it submitted an uncontested statement of material facts that proves it terminated Craig because she was unable to meet certain conditions of employment during her probationary period and not for any discriminatory reasons. (Id. at 117.)

The Magistrate Judge issued her Report on August 6, 2019, recommending granting Tennessee DCS's Motion for Summary Judgment.[3] (ECF No. 36 at 240.)

Craig submitted an Objection to the Report on August 19, 2019. (ECF No. 50.) Reading her Objection as a whole, the Court construes it to be an objection to some of the Report's Proposed Findings of Fact and implicitly to the effect of those findings on the underlying legal analysis. (See id.) Craig

---

[3] In part, the Report concludes that:

> On July 29, 2019, Plaintiff filed two documents entitled "Response to Show Cause Order for Motion for Summary Judgment," in which she states as follows: "I do not feel the summary for judgement [sic] should be disputed on this Plaintiff's behalf." (D.E. #46, #47). Based upon these Responses, it is RECOMMENDED that DCS'S Motion for Summary Judgment as well as its Statement of Undisputed Material Facts should be deemed as undisputed.

(ECF No. 48 at 243). Craig's possibly unintended concession does not resolve the case. Craig attached an exhibit to the document in which she makes her "concession." That exhibit responds to Tennessee DCS's Requests for Admission ("RFAs"), disputing a number of DCS's proposed findings. (See ECF No. 46 at 232-33.)

3

does not object to the Report's Title VII legal standards and the analysis based on those standards. (See id.)

Specifically, Craig disagrees with the Report's findings that:

- "[Craig] was more nervous during her second panel assessment than she was during her first panel assessment." (ECF No. 48 at 245; see No. 50 at 259.)

- Craig failed her second panel assessment. (See ECF No. 48 at 246; No. 50 at 260.)

- "[A co-worker named Stephen Shopher] was moved to an office at the Child Advocacy Center because he was more senior than Plaintiff and did not need the support of other DCS personnel." (ECF No. 48 at 251; see No. 50 at 260.)

Craig objects to those findings and argues that the facts are material and disputed and that Tennessee DCS's Motion for Summary Judgment should be denied. (See ECF No. 50 at 260-61.)

The first two findings to which Craig objects are relevant to her failure to hire and termination of employment claim. The last is relevant to Craig's unequal terms and conditions of employment claim. All rely on Title VII. (See ECF No. 9 at 23; 42 U.S.C. §§ 2000e, et seq.) The Court adopts all of the

Report's other findings of fact.  See Thomas v. Arn, 474 U.S. 140, 151 (1985).

**II. Jurisdiction**

The Court has jurisdiction over Craig's claims.  Under 28 U.S.C. § 1331, U.S. district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  The Amended Complaint alleges that Tennessee DCS discriminated against Craig in violation of Title VII of the Civil Rights Act.  (ECF No. 9 at 21.)  Craig's claim arises under the laws of the United States.

**III. Standard of Review**

**A. Report and Recommendation**

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district court duties to magistrate judges.  See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)); see also Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003).

For dispositive matters, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).  After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations.  28 U.S.C. §

5

636(b)(1). The district court is not required to review -- under a de novo or any other standard -- those aspects of the report and recommendation to which no objection is made. Arn, 474 U.S. at 150. The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. See id. at 151.

**B. Summary Judgment**

Under Federal Rule of Civil Procedure 56, on motion of either party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of her case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir.

2009)). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The nonmovant must identify specific evidence in the record that would be sufficient to justify a trier of fact's decision in the nonmovant's favor. See Fed. R. Civ. P. 56(c)(1); Hanson v. Madison Cty. Det. Ctr., 736 F. App'x 521, 527 (6th Cir. 2018). "[T]he disputed issue need not be resolved conclusively in favor of the non-moving party, [although] that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." Gaines v. Runyon, 107 F.3d 1171, 1174-75 (6th Cir. 1997) (quoting First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**IV. Analysis**

Craig objects only to specific findings of fact in the Report. The Court reviews de novo only the findings of fact to which Craig objects and the application the relevant law to those facts. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); see also Arn, 474 U.S. at 150.

**A. Undisputed Material Facts**

The Magistrate Judge properly found that Craig's response to Tennessee DCS's Undisputed Statement of Material Facts under Local Rule 56.1(b) was untimely. (See ECF No. 48 at 242-43); LR 51.6(b). The Magistrate Judge, therefore, recommends that Tennessee DCS's submission of facts should be deemed undisputed for purposes of the motion for summary judgment. (See ECF No. 48 at 243.)

In Craig's Response to Show Cause Order for Motion for Summary Judgment, she asks the Court to "[p]lease excuse this Plaintiff's tardiness to this matter as Plaintiff herby [sic] assumed this matter would be attended to during the scheduled Pre Trial/Trial Dates and had no recollection an immediate response was being advised of this matter." (ECF No. 47 at 237.) Pro se litigants are entitled to some leniency in complying with formal procedures. Cf. Haines v. Kerner, 404 U.S. 519, 520–21 (1972)(pro se complaints held "to less stringent standards than formal pleadings drafted by lawyers"). In the interest of justice, the Court will excuse Craig's

untimeliness.  See LR 1.1 ("[T]he Court may deviate from any provision of any Local Rules of this Court, when appropriate for the needs of the case and the administration of justice.")  In analyzing Craig's objections, the Court will not deem all of Tennessee DCS's Undisputed Statement of Material Facts undisputed because Craig was late.  There is, however, no genuine dispute about any of the material findings of fact to which Craig objects.  Tennessee DCS is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).

**B. Claim of Failure to Hire and Termination of Employment**

**1. Legal Standard**

Courts analyze Title VII failure to hire and termination of employment claims under what has become known as the McDonnell Douglas burden-shifting framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also 42 U.S.C. § 2000e-2(a)(1)("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, . . . because of such individual's race, color, religion, sex, or national origin[.]").

Under McDonnell Douglas, the plaintiff first has the burden of establishing a prima facie case of employment discrimination. 411 U.S. at 802.  To prove a prima facie case, a plaintiff may show direct evidence of intentional discrimination by the defendant, see Jacklyn v. Schering-Plough Healthcare Prod. Sales

Corp., 176 F.3d 921, 926 (6th Cir. 1999), or circumstantial evidence, which is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." Ondricko v. MGM Grand Detroit, LLC, 689 F.3d 642, 649 (6th Cir. 2012)(citing Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997)).

To make out a prima facie case based on circumstantial evidence, a plaintiff must prove: "(1) [M]embership in the protected class; (2) that he or she suffered from an adverse action; (3) that he or she was qualified for the position; and (4) that he or she was treated differently from similarly situated members of the unprotected class." Alexander v. Local 496, Laborers' Int'l Union of N. Am., 177 F.3d 394, 402–03 (6th Cir. 1999); McDonnell Douglas, 411 U.S. at 802; see also Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252–53 (1981).

If the plaintiff satisfies the first step, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id.

If the employer articulates a "legitimate nondiscriminatory reason," the plaintiff "ha[s] an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253.

## 2. Analysis

Craig admits that, as a term and condition of employment, DCS case managers are required to pass a panel assessment during their probationary period to satisfy the requirements of the position. (ECF No. 44-2 at 179-81; No. 46 at 232.) The Report finds, and Craig does not dispute in her Objection, that she received a failing score of 14 on her first panel assessment, and thus that she was required to participate in a second panel assessment. (ECF No. 48 at 245; No. 46 at 233.) What Craig does contest in her Objection is the Report's finding that she failed the second assessment. (See ECF No. 48 at 246; No. 50 at 260.)

The Report also finds that "[Craig] was more nervous during her second panel assessment than she was during her first panel assessment," and that "[Craig] was so nervous that she was offered a break and reminded that the second panel assessment was a conversation and that, if she needed clarity or other assistance, to feel free to let the panel know." (ECF No. 48 at 245-46.) In her Objection, Craig disputes that finding, arguing that:

> [She] WAS NOT nervous on the second Panel and All [sic] Panelist are taking up for one another for the sake of their jobs. But there is a concern of the panelist making untrue statements that [she] was nervous on the second panel and they know that [she] was not. No one had to take [her] out of the room and explain anything a second time.

(ECF No. 50 at 259.)

If Craig had properly submitted significant probative evidence that she passed the second panel's assessment, she could create a question of material fact and summary judgment might not be appropriate. She could satisfy the <u>McDonnell Douglas</u> requirement that she be qualified for the position, assuming she also satisfied the other requirements. <u>See</u>, <u>e.g.</u>, <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564, 575 (6th Cir. 2003) (reversing the granting of summary judgment when there was a question of material fact about whether the employee was qualified). Craig has submitted no such evidence.

Tennessee DCS has submitted evidence of an "Employee Notification of Conditions of Employment," signed by Craig, stating that passing a panel assessment is a condition of employment. (ECF No. 44-4 at 196-98.) Tennessee DCS has also submitted Panel Instructions that detail the procedure for the panel generally and the result when someone scores lower than a 15 on her second panel assessment. (<u>See</u> <u>id.</u> at 199)("If a New Hire is rated with a 15 or below on the second panel then the process of termination should begin.") Tennessee DCS has submitted a "Panel Rating Summary" for Craig's second panel assessment that summarizes, details, and includes a rubric of her scores for that assessment. (<u>See</u> <u>id.</u> at 206-07.) That summary conclusively establishes that Craig scored a 9 on the

12

assessment, which was below the required condition-of-employment score of 15.  (See id.)  Tennessee DCS has submitted three individual employee affidavits from the members of the second panel testifying that Craig scored a 9 and that their assessment and score were based "solely on the quality of [Craig's] answers and written case summary" and "solely on her performance during the panels," that "race was never a consideration or factor in her employment," and that "[n]o panel member ever discussed Ms. Craig's race or has ever shown a bias against African-Americans." (ECF No. 44-4 at 195; No. 44-5 at 210; No. 44-6 at 218.)  Craig has submitted no evidence to the contrary.

Tennessee DCS's evidence and the lack of any evidence to support Craig's contention that she passed establish that Craig did not pass the second panel assessment.

Although Craig denies she was nervous during the second panel assessment, she appears to confuse the finding that the panelists offered her a break outside the room, with her actually leaving the room.  That confusion is not material because Craig's taking a break relates tangentially at best to her failure to pass.  Craig's nervousness could speak to her "self-confidence" score and that appears to be why she disputes Tennessee DCS's description.  However, because the Court finds that Craig has not presented any evidence that she passed the

panel's assessment, the extent of her nervousness during the panel is not material.[4]

The Report concludes that there is no evidence of direct discrimination in the record. (ECF No. 48 at 249-51). Craig does not contest that conclusion in her Objection. (ECF No. 50 at 58-61.) Based on the findings of fact, Craig cannot establish a prima facie case of employment discrimination under the circumstantial evidence theory of the McDonnell Douglas framework. See McDonnell Douglas, 411 U.S. at 802. That Craig failed to pass the second panel assessment establishes that she was unqualified for the job, because she could not meet a condition of employment. See id. Craig cannot satisfy the requirement that "she was qualified for the position."[5] See id.

Craig's objections to the findings of fact about her second panel assessment and her nervousness are OVERRULED.

**C. Claim of Unequal Conditions of Employment**

Craig claims that, because of her race and color, Tennessee DCS subjected her to unequal terms and conditions of employment by giving her a different office than a co-worker, Stephen

---

[4] Craig's score under the "self confidence" part of the rubric was higher than her score in other categories. (See ECF No. 44-4 at 207.)

[5] In her Objection, Craig submitted evidence of a certificate, a letter of recommendation, and a resume to support her contention that she was qualified for the position. (ECF No. 50 at 260-61, 263-69.) That information, although potentially relevant to other hiring criteria, is not relevant to her performance on the panel assessment: successful performance that was a condition of employment with Tennessee DCS. (ECF No. 44-3 at 190.)

14

Shopher. (ECF No. 9 at 23-24.) Craig's objection to the Magistrate Judge's finding of fact on this claim has no merit.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." § 2000e-2(a)(1); see also Ricci v. DeStefano, 557 U.S. 557, 577 (2009). Disparate treatment "occur[s] where an employer has 'treated [a] particular person less favorably than others because of' a protected trait." Ricci, 557 U.S. at 577 (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 985–986 (1988)). A disparate treatment plaintiff must establish "that the defendant had a discriminatory intent or motive" for taking a job-related action. Watson, 487 U.S. at 986.

"In order to set forth a claim of racial discrimination [under Title VII], a plaintiff must show that he has suffered an adverse employment action; that is, he must establish that he has suffered a 'materially adverse' change in the terms or conditions of employment because of the employer's actions."[6]

---

[6] It is questionable whether an employer's decision allocating office space constitutes an adverse employment action. See Lockridge v. The Univ. of Maine Sys., 597 F.3d 464, 472 (1st Cir. 2010) (reasoning in a Title VII retaliation action that, under certain circumstances, denial of preferred office space may constitute a materially adverse employment action, although a categorical rule that it does or does not is not appropriate under Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)). The Court need not answer that question here, because Craig's claim is foreclosed by her admission and lack of evidence. (See ECF No. 44-2 at 186.)

15

Allen v. Michigan Dep't of Corr., 165 F.3d 405, 410 (6th Cir. 1999).

Craig has offered no evidence about the reason for the office switch. Tennessee DCS has offered evidence through two supporting affidavits, which state that Shopher was moved to a different location "because he was more senior than [Craig] and [he] did not need the support of other DCS personnel." (ECF No. 44-2 at 186.; No. 44-4 at 195; No. 44-6 at 217.). Tennessee DCS's uncontested evidence precludes Craig's disparate treatment claim because it establishes that the reason for the differential treatment was nondiscriminatory, i.e., differences in employment stature, not discriminatory intent or motive.

In her Objection, Craig states that "[her supervisor moved Craig] out of her office so Stephen Shopher did not have to deal with Law Enforcement, due to a disagreement he and one of the officer's [sic] had." (ECF No. 50 at 260.) Craig thus concedes that the "less favorable" office switch was not due to discriminatory animus against Craig, but for nondiscriminatory reasons. (See id.) Her concession also precludes a finding of disparate treatment because it is contrary to the requirement that a supervisor have a discriminatory intent or motive for the difference in treatment.[7] See Watson, 487 U.S. at 986.

---

[7] Absent Craig's concession, Tennessee DCS's justification could be pretextual, but Craig has submitted no evidence to establish pretext. See Zambetti v. Cuyahoga Cmty. Coll., 314 F.3d 249, 258 (6th Cir. 2002) ("To

Craig has conceded facts establishing that the difference in treatment between her and Shopher was not based on animus against Craig. Craig's objection to the Magistrate Judge's finding of fact about the office switch is OVERRULED.

**V.  Conclusion**

For the foregoing reasons, Craig's Objection is OVERRULED. The Report's recommendation is ADOPTED. Tennessee DCS's Motion for Summary Judgment is GRANTED.

So ordered this 29th day of August, 2019.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

establish pretext, plaintiff must show that defendants'[sic] nondiscriminatory reason: (1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct."); see also White v. Baxter Healthcare Corp., 533 F.3d 381, 392 (6th Cir. 2008) (quoting Burdine, 450 U.S. at 256)("Pretext may be established 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'").